# Richmond

JAMES C. REESE v. GILBERT H. SNELSON.

June 18, 1951.

Record No. 3767.

Present, Hudgins, C. J., and Spratley, Buchanan, Miller and Smith, JJ.

The opinion states the case.

*W. W. Beverley, R. Carter Scott, Jr.,* and *Beverley H. Randolph, Jr.,* for the plaintiff in error.

*J. B. Browder,* for the defendant in error.

MILLER, J., delivered the opinion of the court.

Under review are a verdict and judgment obtained by Gilbert A. Snelson for personal injuries he sustained when struck by an automobile operated by defendant, James C. Reese. The parties will be referred to as plaintiff and defendant in accordance with their positions in the trial court.

There are numerous assignments of error. They are, however, consolidated and set forth as follows:

Defendant contends:

(1) That plaintiff was guilty of contributory negligence as a matter of law that bars his recovery; and

(2) That three of the instructions given at the instance of plaintiff were not warranted by the evidence and were erroneous and prejudicial.

There is no denial that defendant was guilty of negligence that constituted a proximate cause of the accident, yet the assignments of error require that the evidence be set out at some length.

On February 27, 1949, about 8:40 p.m., plaintiff was walking southwardly across Broad Street just east of the railway station known as Broad Street Station in the city of Richmond when struck by defendant's automobile proceeding eastwardly along Broad Street.

Broad Street is 82 feet wide and extends in an easterly and westerly direction. There are three lanes, each marked by white lines for east-bound traffic, and a similar number marked in like manner for traffic moving westwardly. In the center of the street is a marked strip five feet wide in which are erected electric light poles and which space serves as a safety zone between east- and west-bound traffic.

Davis Avenue, 57 feet wide, extends in a northerly and southerly direction and intersects Broad Street from the south, but does not cross. On its eastern side is a sidewalk about 9½ feet wide. On the north side of Broad Street across from Davis Avenue is a hard-surfaced driveway 50 feet wide leading to Broad Street Station. Though open to and used by the public, it is actually upon privately owned property. The eastern curb line of this driveway would be about 9½ feet east of the eastern curb of Davis Avenue if Davis Avenue were extended northwardly across Broad Street. Otherwise stated, the driveway is not directly across Broad Street from Davis Avenue, but there is an offset to the east of about 9½ feet, yet for practical purposes it appears to be an extension of Davis Avenue north of Broad Street. There is a sidewalk 18 feet wide on the eastern side of this driveway, and it is so nearly across Broad Street from the Davis Avenue sidewalk that the eastern edge of the sidewalk of Davis Avenue prolonged across Broad Street would constitute the western edge and curb line of the 18 foot sidewalk to the driveway. Thus if the western line of the 9½ foot side-

walk and the eastern line of the 18 foot sidewalk be extended into Broad Street a 27½ foot consolidated area or crosswalk would result.

The evidence shows that when plaintiff, an employee of the Atlantic Coast Line Railway Co., went to work, he parked his truck in the driveway leading northwardly from Broad Street to the station. When he left his work about 8:30 p.m., he proceeded through the station and on southwardly to his parked truck and there found that the battery had run down. He then walked along the 18 foot sidewalk on the eastern side of the driveway until he reached the northern line of Broad Street intending to cross to the south side of Broad Street near Davis Avenue where an automobile service station was located to secure assistance.

Snelson paused momentarily on the north sidewalk of Broad Street and then proceeded on southwardly. When he reached the center of the street he observed two automobiles in close proximity to him approaching from the west. He stopped there in the five-foot safety area to allow these two cars to pass in front of him. At that time he also says he saw the headlights of a "bunch of cars" farther up the street which were likewise approaching from the west. These several vehicles then appeared to him to be about one-half block away. He thought he would have ample time and opportunity to cross the remaining southern half of Broad Street and reach the sidewalk before they arrived so he continued walking toward the south curb and "to the corner of Davis Avenue." When about 13 feet from the edge of the sidewalk and thus two-thirds of the way or more across the southern half of Broad Street he looked again to his right and defendant's car which was approaching from the west was almost upon him. It was only a few feet away and too close to avoid. He says that he sought to lessen the force of the impact by throwing out his hand and attempting to "jump on the radiator." He was, however, struck a severe blow, knocked or carried some short distance eastwardly, and thrown to the street.

Plaintiff was unable to definitely identify the car that struck him as being one of those he saw when he was in the center of Broad Street. However, it is reasonable to conclude that it was one of the "bunch of cars" of which he had seen the headlights when he paused in the center of the street and which then appeared to him to be half a block away.

The evidence discloses that plaintiff was not crossing Broad Street within the prolongation of the lateral lines of the 9½ foot eastern sidewalk of Davis Avenue, but was crossing to the east of those lines. However, his testimony and that of another witness and certain circumstances in evidence tend to prove that he was crossing within the prolongation of the lines of the 18 foot eastern sidewalk of the driveway.

Defendant contended and offered much evidence to the effect that plaintiff was so far to the east of Davis Avenue as he crossed Broad Street that he was not even within the prolongated lines of the 18 foot sidewalk to the driveway along which he had walked to Broad Street from where his truck was parked.

That the evidence was conflicting upon this factual issue is, we think, conceded by the following statement appearing in defendant's brief: "His evidence as to exactly where he was is confusing and uncertain, although inferences from his own testimony may support the statement that he was within the prolongation of the lines of the private sidewalk." This factual question was therefore, if material from a legal standpoint, properly submitted to the jury.

Defendant contends that as the driveway is located upon private property, the prolongation of the lateral lines of its sidewalk does not constitute a crossing within the contemplation of section 46-244, Code, 1950. The provisions of that section are:

"Right of way of pedestrians.—The driver of any vehicle upon a highway within a business or residence district shall yield the right of way to a pedestrian crossing such highway within any clearly marked cross-walk or any regular pedestrian crossing included in the prolongation of the lateral boundary lines of the adjacent sidewalk at the end of a block, except at intersections where the movement of traffic is being regulated by traffic officers or traffic direction devices.

"No pedestrian shall enter or cross an intersection regardless of approaching traffic.

"The drivers of vehicles entering, crossing, or turning at intersections shall change their course, slow down or come to a complete stop if necessary to permit pedestrians to safely and expeditiously cross such intersection."

In other words, defendant says that plaintiff, when crossing within "the prolongation of the lateral boundary lines" of this

sidewalk to the driveway was not crossing at an intersection and is not entitled to the rights accorded by the statute.

■ With that legal contention we cannot agree.

Along the north side of Broad Street eastwardly and westwardly from this driveway there are spaces the length of ordinary city blocks or longer before there are other intersecting streets or driveways open for vehicular traffic which are adjoined by a sidewalk for pedestrian use. The driveway in question is freely, regularly and much used by vehicular traffic turning from Broad Street to the station or coming directly from Davis Avenue across Broad Street to the station. The eighteen-foot sidewalk, though actually upon privately owned property, is used in a similar manner as the 9½ foot sidewalk of Davis Avenue. It may be conveniently used and is used by pedestrians who turn from the north sidewalk of Broad Street and traverse it to the station. It also constitutes a continuing though slightly offsetting walkway for pedestrians who walk northwardly along the 9½ foot sidewalk on Davis Avenue to Broad Street and then cross that street and continue their course on to the station.

■ The purpose of section 46-244 is to afford pedestrians crossing at an intersection at the end of any city block a right of way over vehicular traffic and to that extent give them some degree of protection from its dangers. If the rights of a pedestrian crossing at this place are so limited as to require that he stay within the prolongation of the lateral lines of the 9½ foot sidewalk of Davis Avenue during his entire course across Broad Street, it would necessarily result in his stepping into the vehicular driveway to the station whether he undertook to enter or depart from that course at the north side of Broad Street. That is true because an extension northwardly and directly across Broad Street of the lateral lines of the 9½ foot sidewalk of Davis Avenue brings it into the vehicular driveway at the northern edge of Broad Street instead of squarely meeting the 18 foot eastern sidewalk to the driveway. To require a pedestrian crossing at this point to stay strictly within the prolongated lateral lines of Davis Avenue sidewalk would ultimately place him in the mouth of the vehicular driveway instead of upon the 18 foot sidewalk and would cause him to incur additional risk and increased danger. Such a strict and unreasonable construction of the statute which was obviously enacted and in-

tended to be for the convenience, safety and protection of pedestrians is not justified.

In *Morris* v. *Dame,* 161 Va. 545, 171 S. E. 662, the facts were that a privately owned and maintained side road entered Lee highway on the south but did not cross. It extended from the highway "southwardly about 400 feet to the Christiansburg Supply Company's Plant where it" ended. It was regularly and often used by the public going to and from railroad freight yards and plants along its course and was commonly called the "freight-yard road." A collision occurred between two trucks on the "north side of Lee highway, immediately opposite the mouth of the freight-yard road" out of which road one truck had emerged.

In determining whether or not the place where the accident happened was in an "intersection" within the meaning of the statute then in effect, we said:

"The freight-yard road is not a State or county road; but it is 'open to the use of the public for the purpose of vehicular travel' and is much used by the public in going to and from the railroad freight yard and the plants situated along it. It clearly comes within the definition of a 'highway' as distinguished from a 'private road or driveway' as these terms are defined in the 'uniform act regulating the operation of vehicles on highways.' " (161 Va. at p. 555.)

The definition of an "intersection" as it appeared in Acts of 1926, ch. 474, pp. 766-767, which was in effect when that accident occurred has not been changed and the definition of "highway" as it then appeared has not been materially altered. (Compare definitions of these terms in Acts, 1926, ch. 474, pp. 766-767, with those in sec. 46-1, Code, 1950.)

Defendant contends under authority of *Hendricks* v. *Virginia Electric, etc., Co.,* 161 Va. 793, 172 S. E. 160, that the prolongation across Broad Street of the lateral lines of the 18 foot sidewalk does not constitute a regular pedestrian crossing. He relies upon the following paragraph in the opinion of Chief Justice Campbell:

"In the recent case of *Lucas* v. *Craft, ante* [161 Va.], page 228, 170 S. E. 836, we had occasion to consider the relative rights of pedestrians and vehicles at city crossings, as defined and modified by statutes * * * and do not desire to recede from or to modify anything which was there said. But this case does

not come within their purview. This crossing was a private one, put there, it is true, for the convenience of the public, but also for its own purposes in that it provided a station stop which served both the public and itself. Its fee was in the car company." (161 Va. at p. 797.)

The facts and circumstances in that case are materially different from those in the case at bar. The defendant's double-track electric street car railway was maintained upon a privately owned thirty foot wide strip of land which was bordered on each side by paved public roads, one for northbound and the other for southbound vehicular traffic. In describing this physical situation, the court said:

"All of these facilities of transportation go under the general name of Hampton boulevard, but the two roadways, one intended for north and one for southbound traffic, are not in fact one highway, but are separated in the manner stated." (161 Va. p. 795.)

Extending from one of these public roads to the other and thus across defendant's two tracks and thirty-foot strip of land was a cinder surfaced crossing maintained by defendant. Plaintiff, a pedestrian, undertook to cross from one highway to the other by walking along this cinder surfaced crossing. In so doing, he fell upon one of the tracks and was struck by a streetcar. It thus appears that plaintiff was not within the prolongation of the lateral lines of a sidewalk as required by section 46-244; nor was the streetcar that struck him a "vehicle" within the meaning of Acts of 1926, *supra,* (now 46-1 (27), Code, 1950.)

In the light of these facts, it is apparent that the quotation relied upon is without significance when applied to the facts at hand.

Upon this phase of the case we are definitely of the opinion that plaintiff was entitled to the right of way and it was defendant's duty to change his course, "slow down or come to a complete stop if necessary to permit" him to cross in safety. (Sec. 46-244, *supra.*)

Entitled as plaintiff was to the right of way, we cannot say that, after leaving the center of Broad Street on his course towards the curb, he was negligent as a matter of law in failing to look again for the approaching car before he did. When he paused in the center of the street, it appeared to him to be half a block away and he thereupon undertook to traverse the southern half of the street. He looked to his right when he had walked

about two-thirds of the distance towards the south curb. To require him to keep constant watch of the oncoming cars under penalty of being convicted of contributory negligence as a matter of law, would be to demand more than reasonable care under the circumstances and deprive plaintiff of the benefits of the statute.

At the instance of plaintiff, and over defendant's objection, Instruction No. 3 was given. It follows:

"That it was the duty of the Defendant to keep a reasonable lookout for others, both pedestrians and motorists, using Broad Street both at and between intersections but *that since the pedestrian has the superior right to cross at intersections which right extends from one side of the street to the other,* the defendant was under the duty of exercising greater vigilance at intersections than between intersections and at the intersection of Davis Avenue and Broad Street, it was his duty to look for pedestrians that might be crossing at any point between the northeast and the southeast corners and to see what a reasonable lookout would have revealed to him within that *area.* If the Jury believe from the evidence that he failed in this duty and that such failure proximately caused the accident, and that the plaintiff was not guilty of negligence efficiently contributing thereto, they should find in favor of the Plaintiff." (Italics ours.)

Defendant specifically objected to the italicized phrase of the instruction. He insisted that by the language used, the court assumed and in effect told the jury that the plaintiff was within the crosswalk when he crossed Broad Street. He also insisted that after the italicized word "area" the following proviso should have been added: "provided you believe that plaintiff was crossing at such intersection." It is urged that by the language used in the first part of the instruction and also by omission of the proviso sought to be inserted after the word "area", the court in reality told the jury that plaintiff was crossing at the intersection. The court had already given Instruction No. 2 which reads as follows:

"That 'the intersection' as referred to in these instructions embraces the area of the streets in question included within the prolongation of the lateral boundary lines of all of the sidewalks on the four corners of Broad Street, Davis Avenue and the eastern entrance to the Broad Street Station."

That instruction accorded plaintiff the benefit of the statute

if he was crossing within the eighteen foot prolongation of the sidewalk to the driveway. Whether he was or not was an important factual issue with much evidence tending to prove that he was not.

■ Instruction No. 3 was a finding instruction. Its language is reasonably susceptible of the construction which defendant feared the jury might give it, i. e., that the court meant that plaintiff was crossing at the intersection. *Flanagan* v. *Harvey,* 160 Va. 214, at p. 223, 168 S. E. 448.

If plaintiff was crossing at a proper place, i. e., at an intersection, he was entitled to the right of way and thus in a more favorable position than if crossing between intersections. If crossing between intersections, defendant's duties would be less exacting than those imposed upon him if plaintiff was crossing at the intersection.

We think this finding instruction ignores a vital and controversial issue. That is true because its language is fairly susceptible of the construction that plaintiff was as a matter of fact crossing where he should cross and if so construed, it thereby takes from the jury the necessity of finding upon that factual issue. If thus construed by them, as it may well have been, it would direct a verdict upon a partial view of the evidence whereas it should have included and required a finding of fact by the jury on all controversial issues necessary to sustain a verdict. By the instruction, the plaintiff is given the rights accorded when at an intersection, yet by no language or phrase used is the jury required to factually find that the plaintiff was crossing at the intersection. *Hawkins & Buford* v. *Edwards,* 117 Va. 311, 84 S. E. 654; *Outlaw* v. *Pearce,* 176 Va. 458, 11 S. E. (2d) 600; *Stevens* v. *Mirakian,* 177 Va. 123, 12 S. E. (2d) 780, and *Davis* v. *Webb,* 189 Va. 80, 52 S. E. (2d) 141.

We have examined the other instructions but do not think they cure the omission in this finding instruction, i. e., to clearly require a factual finding upon the very important question of whether or not plaintiff was crossing within the prolongation of the lateral lines of the walkway. *Smith* v. *Clark,* 187 Va. 181, 46 S. E. (2d) 21.

Plaintiff contended that the accident happened in what is called a "business district." By Instruction No. 4, given at his instance, the jury was told, among other things, that if defendant, immediately prior to the accident "drove in excess of

fifteen miles per hour in any event, then he was guilty of negligence.'' By section 46-212 (2) (b), it is made unlawful to drive in a ''Business district'' at a speed in excess of fifteen miles per hour.

A ''business district'' is defined in section 46-185, Code, 1950, as follows:

'' 'Business district' defined.—The territory contiguous to a highway where 75 per centum or more of the total frontage, on both sides of the highway, for a distance of 300 feet or more is occupied by buildings in use and operation for business purposes shall constitute a business district for the purposes of this title.''

Defendant says that no evidence was introduced sufficient upon which to say that the accident happened in a business district. That it happened in such a district was what the court said in Instruction 4 when it told the jury that it was negligence to drive in excess of fifteen miles per hour where the accident happened.

The several exhibits,—a map and seventeen pictures of the intersection and place where the accident happened—introduced in evidence do not definitely disclose the character of the area. From them many buildings along Broad Street in the immediate vicinity appear to be used for business purposes but their total frontage and the amount of frontage of vacant land on that street immediately west and east of Davis Avenue and the driveway are not disclosed by the exhibits. However, in his testimony, defendant was asked the following questions and gave the following answers:

''Q. Mr. Reese, you were familiar enough with the City to know you were out there in a business zone, were you not?

''A. Yes.

''Q. And you do know that fifteen miles an hour is the speed limit in a business zone, don't you?

''A. I know that. I also know that traffic moves faster than that continually all day long, as you do.

''Q. You knew, then, as you went along there that you were exceeding the speed limit, isn't that correct?

''A. Technically speaking, yes.''

Sergeant Seagraves, of the Richmond Police Department, also testified that this was a business district as disclosed by the following question propounded to him and his answer:

''Q. That is a residential or business there?

A. That is a business district, sir.''

No objection was made to the introduction of this testimony, when offered, on the ground that the witnesses were stating conclusions of law and not facts or that they were merely giving their opinions. Nor is there any evidence in the record to contradict the statements. If of evidential value, this testimony is conclusive of the fact sought to be established and no construction of the statute defining a ''business district'' is needed.

What the status of the district is can only be determined from its physical condition. That could be and was observed by the witnesses who testified. Because they believed from its appearance that it was a ''business district'' does not render their testimony wholly a conclusion of law and valueless. In fact, an automobile driver as he proceeds along a street must observe the character of the area to know and determine at what speed he may drive. The answers given by the witnesses amounted to a determination and summation of what was the physical character of the area. If defendant wished to object to the answers which are in part legal conclusions and in part factual summations, he should have done so when the questions were asked that elicited this testimony and requested that the witnesses be questioned only upon factual matter. *Hawkins & Buford v. Edwards, supra,* and 32 C. J. S., ''Evidence'', secs. 453 and 567, pp. 90 and 378. He failed to do so and we think the testimony was of evidential value and conclusive of the character of the area, and the instruction, under these circumstances, may not be complained of by defendant.

Uncontradicted evidence proved that the headlights of defendant's car were burning and their intensity met the requirements of the statute. (Sec. 46-277, Code, 1950). Yet plaintiff offered as an instruction, the unitalicized part of No. 5 as it appears below:

''That it was the duty of the Defendant to have burning on his automobile at the time of this accident two headlights of sufficient intensity to reveal persons at least 100 feet ahead, *and that the uncontradicted evidence is that the defendant's automobile had such lights burning.''*

It was objected to by defendant on the ground that the evidence conclusively disclosed that there was no violation of the statute or evidence of negligence incident to the headlights upon

which to submit an issue to the jury. The court indicated its intention to refuse the instruction as offered. Thereupon plaintiff added the italicized part and re-offered the instruction and in that form it was given over defendant's objection.

By other instructions, the jury had been adequately told of defendant's duty to keep a proper lookout. Concededly there was no evidence tending to prove that he had violated any law relative to the character or intensity of the lights with which his car was equipped. There was no evidence of negligence in this particular and no factual issue presented concerning the character and condition of the headlights. Thus no need to instruct upon this abstract proposition of law and uncontroverted factual matter existed. Upon the evidence as it appears in the record, the instruction was not needed; it unduly emphasized and commented upon one phase of the evidence, and for these reasons, should not have been given. Yet it makes no misstatement of fact or erroneous statement of law, nor is it shown that it was prejudicial or harmful to defendant, and we do not think it constituted reversible error.

We are, however, of opinion that Instruction No. 3 was erroneous and prejudicial and for that reason, the judgment is reversed and a new trial awarded.

*Reversed and remanded.*