# Richmond

THOMAS I. MARSHALL, ADMINISTRATOR OF THE ESTATE OF
ADA B. MARSHALL STROTHERS, DECEASED V.
PEGGY ANN SHAW.

January 17, 1955.

Record No. 4286.

Present, Hudgins, C.J., and Eggleston, Spratley, Buchanan, Miller
and Smith, JJ.

The opinion states the case.

*Edwin C. Brown,* for the plaintiff in error.

*Douglas A. Clark,* for the defendant in error.

MILLER, J., delivered the opinion of the court.

Thomas I. Marshall, administrator of Ada B. Marshall Strothers, instituted action for damages under § 8-633, Code of 1950, against Peggy Ann Shaw for the alleged negligent killing of his decedent. Trial was had before a jury and upon return of a verdict for defendant, judgment was entered accordingly, and the administrator appealed.

The parties litigant will be referred to as plaintiff and defendant in accordance with their positions in the trial court, and Ada B. Marshall Strothers will be called decedent.

On October 31, 1952, about 6:30 p.m. decedent, a pedestrian, was struck at the intersection of Washington and Wilkes streets in the city of Alexandria by an automobile driven by defendant. She was fatally injured and died a few hours later without recovering consciousness.

Washington street, 58 feet wide, extends in a northerly and southerly direction, and Wilkes street, 40 feet wide, runs in an easterly and westerly direction. Both sides of Washington street have double lanes for traffic moving in each direction thereon. The movement of traffic was not regulated at the intersection by an officer or traffic devices. Crosswalks, clearly marked with rubber tile and constituting prolongations of the lines of the adjacent sidewalks, extend across both streets. A plat filed in evidence shows that the crosswalks over Washington street are 12 feet wide, and in the center of each walk there is a marked off safety zone encompassing the 12-foot width of the crosswalk, but only 5 feet broad. Persons crossing the street may avail themselves of these zones and thus better avoid the dangers incident to moving traffic.

It is not denied that decedent, while in the intersection, was struck by defendant's car which was being driven northwardly along Washington street. Yet there is conflict of evidence as to whether or not decedent was in a safety zone when struck, and whether or not the collision took place in the north or south crosswalk. The testimony is also in conflict as to the direction she was facing or proceeding when the mishap occurred.

Evidence offered by plaintiff strongly tended to prove that decedent was proceeding from the east to the west side of Washington street in the south crosswalk and was struck when she momentarily paused in the safety zone of that walk. One witness said that she passed and spoke to decedent while the latter was standing in the safety zone of the south crosswalk facing west. After speaking to decedent, this witness hurriedly traversed the eastern half of Washington street, and as she reached the eastern curb, she heard the collision. What she heard and saw she graphically describes as follows:

"A. * * * After coming across the street I heard a bang and then I looked, then I saw a car going—

"Q. This is north and this is south.

"A. It was going north and on the fender was Mrs. Marshall and I saw her go up in the air and she fell.

"Q. About where did she fall?

"A. About a little bit east of the north safety zone."

After the mishap decedent was found lying in the intersection slightly east of the center of Washington street and 8 feet, 10 inches, south of the north crosswalk, and about 34 feet, 3 inches, north of the south crosswalk. Dirt and debris were scattered from the safety zone within the south crosswalk northwardly to where the body lay. Automobile tire skid marks extended about twenty feet southwardly from the line of the safety zone in the south crosswalk.

Defendant's testimony and that of a witness who occupied her car was to the effect that as the car approached the south crosswalk, defendant was driving about 25 miles

per hour, there was other vehicular traffic in or near the intersection, they both saw several pedestrians, including decedent, crossing Washington street in the north walk from east to west, but defendant did not slow down or change the course of her vehicle. The occupant of defendant's car then said that as the vehicle crossed the north crosswalk, decedent stepped backward into the left front fender of the car. Defendant said that she did not see decedent move as the front of the car passed her, but she did come in contact with the left side of the vehicle.

Another witness on behalf of defendant said that he saw decedent crossing Washington street from the western side toward the eastern side within the lines of the northern crosswalk. He first observed her near the center of Washington street, heard the noise of an impact and when he looked again decedent was lying in the street.

An examination of defendant's car disclosed dents in the left front fender and in the hood in front of the steering wheel and a "wiped" place at the end of the left front bumper.

The legal speed limit for motor vehicles on Washington street was 25 miles per hour, and a witness said that after the accident, defendant stated that she was driving 35 miles per hour when the accident happened, but shortly thereafter she said she was driving within the speed limit.

Plaintiff complains of the refusal of the court to permit the officer who investigated the accident to answer certain questions. While this officer was testifying, counsel for plaintiff interrogated him as to whether he had detected "any alcohol on defendant's breath" immediately after the mishap, and if he had asked defendant whether or not she had been drinking. Objections were made to these questions because the motion for judgment had only charged the defendant with negligence in general terms and had not alleged that she had drunk or was under the influence of intoxicants when the accident occurred. The objections were sustained, but it does not appear from the record that answers were obtained from the witness in the absence of

the jury, and we do not know what his testimony would have been.

When defendant testified she admitted that shortly before the collision she had drunk one three and a half ounce champagne cocktail. It is not contended by plaintiff that had the officer been permitted to answer the two questions, he would have said that defendant had admitted taking more than one glass of champagne.

It is common knowledge that the use of intoxicants may affect or influence the manner in which one operates a motor vehicle. *Crowell* v. *Duncan*, 145 Va. 489, 508, 134 S. E. 576. Hence the court should have permitted the officer to answer the questions. If defendant had desired a more specific charge of her alleged negligence, a bill of particulars should have been requested. However, as we do not know what the officer's answers would have been, we cannot say that plaintiff was prejudiced by the ruling of the court. Nor is it amiss to say that the subsequent admission of the defendant that she had drunk intoxicants in a moderate amount cured any error that was made by the ruling of the court.

By his requested instruction C plaintiff attempted to invoke the doctrine of last clear chance. The evidence offered by plaintiff tends to show that decedent was negligently run down while in or near the safety zone in the north or south crosswalk. If that was done without any negligence on her part, then the administrator is entitled to recover. On the other hand, defendant contends that decedent, without cause or reason stepped backward into the side of the car, and in doing so, negligently contributed to her death. If that be true, then no opportunity was afforded defendant to avoid the accident after decedent, by her act, placed herself in peril. If deceased was guilty of any negligence, it was not until the immediate moment of the impact, and there was no opportunity for defendant to then avoid the mishap. The evidence did not justify an instruction based upon the doctrine of last clear chance, and it was properly refused.

Plaintiff's instruction J, which was refused, follows:

"You are instructed that it is not enough that a driver be able to stop within the range of vision or that he use diligence to stop after discerning an object. The rule makes no allowance for delay in action. He must, on peril of legal negligence, so drive that he can actually discover an object, perform the manual acts necessary to stop, and bring the car to a complete halt within such range, if necessary, to avoid collision with and injury to others on the highway or street."

This instruction was rightly denied. It is sufficient to say that had it been given, it would have made defendant an insurer of decedent's safety.

■ Instruction B, which was refused, follows:

"The Court instructs the jury that if you find from the evidence that Ada B. Marshall Strothers, the deceased pedestrian, started across Washington Street at the intersection of Wilkes Street before the car of the defendant, Peggy Ann Shaw, reached the intersection of Washington and Wilkes Street, and [then] you are instructed that she, Ada B. Marshall Strothers, pedestrian, had the right of way over the car driven by the defendant, and it was the duty of the driver of the car to either change her course, slow down, or come to a complete stop if necessary to permit the pedestrian to safely and expeditiously make the crossing, and if you find that on the occasion in question the pedestrian was exercising due care for her own safety and that the driver of the car disregarded her duty as above set out, and that the same was the proximate cause of the pedestrian's injury and death you must find for the plaintiff."

It is contended by plaintiff that he was entitled to this instruction under the provisions of § 46-244, Code of 1950.[1] The evidence is conclusive that decedent was struck in either the north or south crosswalk, and much of it is to the effect that she was actually within a safety zone when the

---

[1] The driver of any vehicle upon a highway within a business or residence district shall yield the right of way to a pedestrian crossing such highway within any clearly marked crosswalk or any regular pedestrian crossing included in the prolongation of the lateral boundary lines of the adjacent

car came in contact with her. In either event she was entitled to the benefit of the provisions of § 46-244. The fact that she may have stopped momentarily in what is commonly called a safety zone did not deprive her of the protection of the statute. Whether or not decedent contributed to the collision by any negligence on her part was submitted to the jury. Yet plaintiff was clearly entitled to an instruction that advised the jury of the duties imposed by § 46-244 upon the driver who was approaching a crosswalk that decedent was then using to cross the street.

"The language and intent of the General Assembly is so plainly expressed in the statute that it needs no interpretation or construction. It means what is said. At intersecting streets where there are neither traffic lights nor traffic officers, the pedestrian has a superior right—that is, the right to cross from one side of the street to the other in preference or priority over vehicles—and drivers of vehicles must respect this right and yield the right of way to the pedestrian. The pedestrian's right of way extends from one side of the street to the other. It does not begin at any particular point in the intersection nor does it end at any particular point. It begins on one side of the street and extends until the pedestrian has negotiated the crossing. It is impossible, without nullifying the statute, to divide this right of way into different stages in the intersection, yielding the right of way to the pedestrian at one point in the intersection and denying it at another, all at the time of negotiating the *one* crossing." *Lucas* v. *Craft*, 161 Va. 228, 234, 170 S. E. 836.

"The purpose of section 46-244 is to afford pedestrians crossing at an intersection at the end of any city block a right of way over vehicular traffic and to that extent give them some degree of protection from its dangers. * * *

sidewalk at the end of a block, except at intersections where the movement of traffic is being regulated by traffic officers or traffic direction devices.

No pedestrian shall enter or cross an intersection regardless of approaching traffic.

The drivers of vehicles entering, crossing or turning at intersections shall change their course, slow down or come to a complete stop if necessary to permit pedestrians to safely and expeditiously cross such intersection.

"Upon this phase of the case we are definitely of the opinion that plaintiff was entitled to the right of way and it was defendant's duty to change his course, 'slow down or come to a complete stop if necessary to permit' him to cross in safety. (Sec. 46-244, *supra*.)" *Reese* v. *Snelson*, 192 Va. 479, 485, 487, 65 S. E. (2d) 547.

The refusal of this instruction was prejudicial error for which a new trial must be awarded.

Instruction 4 given at the instance of the defendant is complained of. It merely told the jury that if they believed from the evidence that defendant and decedent were both guilty of negligence and that the negligence of each efficiently contributed to the collision, then there could be no recovery by plaintiff. The principle of law propounded was correct, and the evidence relied upon by defendant to establish contributory negligence on the part of the decedent was sufficient to take that issue to the jury and justify the giving of the instruction.

Instruction G, which was tendered by plaintiff and refused, is not included in his assignment of error and though discussed in his brief, it will not be considered. However, as a new trial is to be had for the reasons heretofore stated, it is not amiss to say that the court properly refused this instruction.

*Reversed and remanded.*