# Richmond

ROBERT EDMOND WASHBURN, AN INFANT, ETC. v. MARY COLEMAN DANA.

December 2, 1957.

Record No. 4711.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Whittle and Snead, JJ.

The opinion states the case.

*E. Pryor Wormington* (*Rixey & Rixey*, on brief), for the plaintiff in error.

*Louis B. Fine* (*Jerrold G. Weinberg*, on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

This action resulted from an accident which occurred at approximately 7:30 p. m., October 6, 1955, at the intersection of Atlantic Avenue and 82nd Street in Princess Anne County, between an automobile operated by Robert Edmond Washburn and Mary Coleman Dana, a pedestrian. Mrs. Dana sought damages for injuries sustained, and the jury rendered a verdict for the sum of $10,000. The court overruled Washburn's motion to set aside the verdict and entered final judgment thereon. A writ of error was granted Washburn.

The parties will be referred to at times as plaintiff and defendant in accordance with their positions in the trial court.

Atlantic Avenue, also known as Route 60, at and in the vicinity of 82nd Street is a four lane highway, 40 feet wide running north and south. The two northbound lanes and the two southbound lanes are separated by double solid white lines, but no marking separates the two northbound lanes or the two southbound lanes. The two inside lanes are blacktop and the two outside lanes are concrete, and each of the four lanes is 10 feet wide. Eighty Second Street is approximately 30 feet wide and runs east and west. It is of blacktop construction, and east of Atlantic Avenue there is a gravel path on both sides of the street.

There were no signal devices or traffic officers regulating traffic at the intersection, which is in a residential area. On the northeast corner, there was a stop sign for traffic proceeding westwardly on 82nd Street. There was a street light on the northwest corner about 27 feet north of the northern line of 82nd Street. It burned a 187 watt traffic duty bulb, had a hood over it, and reflected illumination for a radius of approximately 100 feet. The speed limit was 35 miles per hour. At the time of the accident it was dark, dry and clear.

Plaintiff, who resided at No. 207 82nd Street, had been for a stroll down on the beach, as was her daily custom, and was returning home proceeding westwardly on 82nd Street. She said that she was alone and when she approached Atlantic Avenue she stopped on the gravel path on the northeast corner of the intersection, and before attempting to cross Atlantic Avenue she looked to her left, which is south, and saw a car approaching with low beam lights in the passing lane about two blocks distant at a speed she estimated to be be-

tween 35 and 40 miles per hour. She knew the lawful speed limit was 35 miles per hour. There were no obstructions to her vision for a considerable distance. She determined there was ample time and proceeded to cross on the northern side of 82nd Street; then looked to her right and observed two cars proceeding southwardly which passed the intersection and when she reached the northbound passing lane she looked again to her left and saw defendant's car approaching two thirds of a block away at a speed "around 45 miles per hour or faster." She testified that defendant was coming so fast she did not have time to get out of his way. She stood still between the two northbound lanes thinking the car would go around her, but the next thing she knew she was lying in the road. When asked on cross examination if she could not have quickly stepped back to avoid the accident, she stated there was another car approaching from the south in the right or driving lane about three fourths of a block distant, and that she thought the wisest course for her to take was to stand where she was for there was ample room for both drivers to pass if they were careful.

William M. Snider did not see the accident, but got a glimpse of circumstances leading up to it. He said he was proceeding in the passing southbound lane of Atlantic Avenue overtaking another car and when he reached 82nd Street he observed plaintiff "standing in the road between the headlights of two approaching cars." The automobile in the passing lane appeared to him to be overtaking or was about abreast of the vehicle in the right-hand northbound lane. He said he realized the driver of the car in the passing northbound lane would need "room to maneuver", so he was interested in making room for him rather than viewing the accident. He increased his speed and proceeded ahead of the car he was then passing. While he was not positive, his impression was that plaintiff was standing motionless between the double solid white lines and the imaginary line dividing the two northbound lanes.

Sergeant Carl M. Jennette, an investigator of the United States Army, stationed at Fort Story, stated he stopped on 81st Street and made a turn north on Atlantic Avenue. After making the turn his headlights spotted plaintiff at the exact time defendant struck her. He had seen defendant's vehicle pass 81st Street and would not say his speed was in excess of 35 miles per hour because he did not clock him. According to Jennette, there were no cars between his vehicle and that of defendant, which was a Jeep. He said the impact oc-

curred in approximately the center of the intersection; that plaintiff's body was lying partly on the blacktop and partly on the concrete northbound lanes, and that defendant was turning to the left to avoid striking her, but the right rear fender hit her and she "just fell right there." On cross examination, he placed the point of impact at approximately in the center of 82nd Street and about 3 or 4 feet west of the eastern side of the hard surface of Atlantic Avenue. He estimated defendant's car stopped approximately 30 feet from the point of impact on the west side of Atlantic Avenue.

The testimony of Robert M. Boyd was that he arrived at the scene shortly after the accident occurred. He said defendant's vehicle was parked on the west side of Atlantic Avenue approximately 100 feet north of the intersection, and that plaintiff's body was lying 10 or 15 feet north of the northern line of the intersection in about the center of the northbound portion of Atlantic Avenue.

Plaintiff's husband, George Hume Dana, arrived at the scene within a few moments after the accident. He stated defendant parked his car on the west side of Atlantic Avenue approximately 115 feet north of the northern line of 82nd Street and that plaintiff was lying 15 feet north of that line in about the center of the two lanes for northbound traffic. He testified as to the physical conditions existing on the street and highway comprising the intersection, as heretofore described. He said his figures were accurate for he measured them with a 100 foot tape line. He also related that defendant told him at the hospital, soon after plaintiff was under the care of doctors, that he was traveling north, with low beam lights, on the inside lane; that he observed plaintiff standing on the highway; that he reduced his speed to 35 miles per hour and cut his wheels to the left as quickly as possible, and that he thought he had missed plaintiff until he heard the noise caused by striking her body.

W. H. Washburn, father of and a witness for defendant, testified that he, his wife and defendant visited plaintiff at DePaul Hospital in Norfolk the next night after the accident. He expressed his regrets to plaintiff over the accident and offered to assist her if there was anything he could do. He said her response was: "she did not know of anything that could be done; that it was just one of those things that happened; that it could not be helped; that she did not see how it could have been helped; that she looked both ways, she did not see anybody coming, and she started across the street."

He related that on his next visit to the hospital two weeks later,

he was accompanied by his wife, and plaintiff reiterated what she had said on the previous visit, and in addition thereto remarked that "she could not see how in the world he could be at fault, that she just did not see him coming." Plaintiff emphatically denied having made any such admissions to the Washburns. Her version of the essence of the conversations was that she felt sorry for defendant; did not want him prosecuted and sent to jail for she had children, and that she expressed the hope "they would not blame him too much."

Washburn further stated that after a lapse of considerable time, plaintiff and her husband visited his home. Mrs. Washburn was present but defendant was not. After exchange of a few pleasantries, he said Dana produced a letter which he requested them to sign. He could not remember the exact wording of the paper, but its contents were to the effect that plaintiff had made no admissions to them that she was at fault. Washburn said he told Dana "I could not sign that under the circumstances, after the things she had told me." Plaintiff did not enter into the discussion, and he stated Mrs. Washburn did not read the letter or "have anything of importance to say." He further related Dana remarked that suit would be instituted, after which the Danas ended their visit. Mrs. Washburn's testimony substantially corroborated that of her husband. Plaintiff and Dana, her husband, admitted that they took a paper, which was prepared by Dana, to the Washburns to have them sign, but they stated they could not remember its contents.

Defendant, who was nineteen years of age, resided with his parents and he corroborated his father's testimony as to admissions made by plaintiff in the hospital on the night following the accident. He stated that he was alone proceeding north on Atlantic Avenue in the right-hand lane at between 30 and 35 miles per hour; that he decreased his speed to 30 miles at 81st Street; that he saw plaintiff standing motionless in the center of 82nd Street and on the eastern edge of the outside lane of Atlantic Avenue when he was approximately 285 feet from her; that when he got within about 50 feet of plaintiff, who was then in the same position, he proceeded slowly into the passing lane. When he got about broadside of plaintiff he noticed "she had moved right next to where my car was;" that he swerved to the left because he thought he might strike her, and that he heard "the thump against the wheel", and he stopped on the west side of Atlantic Avenue 25 or 30 feet north of

the point of impact.

Defendant further stated that when he started turning in to the passing lane there was no northbound car ahead or abreast of him; that he was not conscious of a northbound car behind him and his high beam lights were on. After the impact Mrs. Dana was lying approximately in the center of 82nd Street about 2 feet east of the imaginary dividing line of the two northbound lanes. His version of what he had told Dana at the hospital differed from that of Dana. He said he informed Dana that he was traveling between 30 and 35 miles per hour and when he got to approximately 50 feet of plaintiff his speed had been reduced to less than 30 miles. On cross examination he admitted that he did not sound his horn and did not apply his brakes until after plaintiff had been struck.

The assignments of error relied upon present the following questions:

(1) Was plaintiff guilty of contributory negligence as a matter of law?

(2) Should plaintiff's evidence be disregarded as false on its face? ■ The jury having rendered a verdict in favor of plaintiff, which was sustained by the trial court, all conflicts in the testimony and all reasonable inferences deducible therefrom must be resolved in plaintiff's favor. The judgment will not be reversed unless it is plainly wrong or without credible evidence to support it. *Neal* v. *Spencer*, 181 Va. 668, 26 S. E. 2d 70; *Clayton* v. *Taylor*, 193 Va. 555, 69 S. E. 2d 424.

In order to hold that plaintiff was guilty of contributory negligence as a matter of law, it is necessary that reasonable men may draw only that inference from the evidence. *Yellow Cab Co.* v. *Gulley*, 169 Va. 611, 616, 194 S. E. 683.

The evidence which must be viewed in the light most favorable to plaintiff, may be briefly summarized as follows: Plaintiff stopped on the gravel path on the northeast corner of the intersection of Atlantic Avenue and 82nd Street, and before attempting to cross Atlantic Avenue, she looked to her left and saw defendant's car approaching with low beam lights about 2 blocks distant in the passing lane for northbound traffic on Atlantic Avenue at a speed she estimated to be between 35 and 40 miles per hour. She knew the speed limit was 35 miles per hour for this area. There were no obstructions to her vision for some distance. Believing there was ample time plaintiff proceeded to cross within the prolongation of

the lateral boundary lines of the gravel walk on the northern side of 82nd Street, and looked to her right and noticed two vehicles approaching from the north in the southbound traffic lanes. She then looked back to the left, at which time she had walked about 10 feet having reached the eastern edge of the northbound passing lane, and saw the defendant's car in the passing lane about two thirds of a block from her approaching at a speed of "around 45 miles per hour or faster." According to plaintiff she did not have time to get out of defendant's way and remained at that point which was at the imaginary dividing line between the two lanes. She said she could not step back because another vehicle was approaching from the same direction behind her in the driving lane about three fourths of a block distant. She considered standing where she was to be the safest course to take, for there was ample room for both drivers to pass her if they were careful. Defendant did not sound his horn nor did he apply his brakes until after he struck her with the right rear fender of his vehicle.

In support of his contention that plaintiff was guilty of negligence as a matter of law, defendant argues that plaintiff was in a position of safety before attempting to cross Atlantic Avenue and saw defendant's car approaching 2 blocks away from her left or south traveling between 35 and 40 miles per hour which she knew was in excess of the speed limit, started to cross and deliberately turned her head to her right or north away from obvious danger, and looked for traffic coming from the north. He maintains had she glanced back to the south sooner she would have seen the impending danger; that traffic coming from the north offered no hazard to plaintiff for she had not reached the center of the highway or near it, and when she did look again to the left it was too late.

Plaintiff entered the intersection ahead of defendant's car and she relies upon § 46-244, Code 1950, as did the plaintiff in *Reese* v. *Snelson*, 192 Va. 479, 65 S. E. 2d 547. There plaintiff undertook to cross Broad Street at Davis Avenue in the City of Richmond from north to south and when he reached the southern half of Broad Street he looked to his right, which is west, and saw some automobiles approaching about a half a block away, and decided he had ample time to complete the crossing in safety. He did not look to his right again until he was two thirds of the way across, when he noticed defendant's vehicle only a few feet away. He was struck and received injuries from the blow. We held it was a question,

for the jury to determine whether or not plaintiff was guilty of negligence.

Mr. Justice Miller, speaking for the court, said: "Entitled as plaintiff was to the right of way, we cannot say that, after leaving the center of Broad Street on his course towards the curb, he was negligent as a matter of law in failing to look again for the approaching car before he did. When he paused in the center of the street, it appeared to him to be half a block away and he thereupon undertook to traverse the southern half of the street. He looked to his right when he had walked about two-thirds of the distance towards the south curb. To require him to keep constant watch of the oncoming cars under penalty of being convicted of contributory negligence as a matter of law, would be to demand more than reasonable care under the circumstances and deprive plaintiff of the benefits of the statute."

In *Mouser* v. *Griffith*, 198 Va. 709, 96 S. E. 2d 98, plaintiff, a pedestrian, was crossing at night at an intersection in an area that would be the prolongation of the side walk. Before attempting to cross, he looked in both directions for approaching cars. He saw the headlights of defendant about a block away to his left. He looked again just before reaching the center of the street and saw the headlights about 100 feet to his left. He next noticed the lights about 30 feet distant approaching rapidly. He accelerated his speed in an effort to get out of defendant's way, but was struck. Defendant appealed on the ground that plaintiff was guilty of contributory negligence as a matter of law, and in affirming the judgment we said:

"The question is not how this Court, as a trier of fact, would have decided the case, but the question is whether there is sufficient credible evidence to support the verdict of the jury. From a brief statement of the facts, the evidence is sufficient to support either the theory of plaintiff or the theory of defendant. We cannot say that the testimony of the plaintiff is so manifestly untrue that reasonable men ought not to believe it.

"This brings the case within the influence of numerous decisions wherein we have held that whether a plaintiff exercises proper care for his own safety or was guilty of contributory negligence barring his recovery was a question for the jury. *Smith* v. *Carpenter*, 198 Va. 91, 92 S. E. 2d 275; *Danner* v. *Cunningham*, 194 Va. 142, 72 S. E. 2d 354; *Burke* v. *Scott*, 192 Va. 16, 63 S. E. 2d 740; *Reese* v. *Snelson*, 192 Va. 479, 65 S. E. 2d 547; *Bethea* v. *Virginia Electric &*

*Power Co.,* 183 Va. 873, 33 S. E. 2d 651."

Defendant relies upon *Whichard* v. *Nee,* 194 Va. 83, 72 S. E. 2d 365; *Hopson* v. *Goolsby,* 196 Va. 832, 86 S. E. 2d 149. It is sufficient to say that the facts in these cases are dissimilar to those in the case at bar.

Under the evidence in the present case, reasonable men could have differed as to whether or not plaintiff exercised proper care for her own safety or was guilty of contributory negligence which would defeat her recovery for injuries sustained. This issue was, therefore, properly submitted to the jury, and the jury having resolved the issue in plaintiff's favor, the verdict will not be disturbed on this ground.

Defendant also contends that plaintiff's evidence is false on its face and for that reason she could be denied recovery. The evidence discloses that there was agreement by all parties concerned that defendant and his parents, Mr. and Mrs. Washburn, visited plaintiff in the hospital on the night following the accident; that defendant's parents again visited plaintiff in the hospital about two weeks later, and that still later plaintiff and her husband visited the Washburns in their home and produced a paper writing prepared by Dana which they requested the Washburns to sign, but the request was refused. The testimony of the Washburns was that the paper contained a statement that plaintiff had made no admissions to them to the effect she was at fault. Defendant argues that plaintiff and her husband, instead of denying the alleged contents of the paper writing, gave the incredible explanation that they had forgotten what its contents were, while admitting they had discussed it between themselves; were familiar with its contents and that it had a bearing on the outcome of the case.

Defendant further contends that since the Washburns' testimony in regard to the contents of the paper writing was not incredible and not contradicted, it must be accepted, and that since plaintiff and her husband are intelligent persons, it makes a strong inference they were not telling the truth when they could not remember what was in the paper writing.

The letter in question was prepared by Dana soon after plaintiff left the hospital, which was months prior to the trial. While it may seem implausible and strange to many persons that their memory had lapsed and they could not recall what the paper contained, yet we must recognize the fact that memory is not infallible. Frequently

intelligent people fail to recall circumstances of an event and even the names of friends and acquaintances. We also note that plaintiff positively denied having made the admissions charged to her.

We are unwilling to say that plaintiff's evidence is so manifestly false that reasonable men ought not to believe it. The jury saw and heard the witnesses testify and it was within their province to determine the credibility of the witnesses and the weight to be given their testimony. Furthermore, the trial judge, by approving the verdict did not consider plaintiff's evidence incredible. See *Simpson* v. *Commonwealth*, 199 Va. 549, 100 S. E. 2d 701, decided today, for a more detailed discussion of credibility of witnesses.

Plaintiff was not guilty of contributory negligence as a matter of law, nor should her evidence be regarded as false on its face, and thus the trial court did not err in refusing to set aside the verdict.

The judgment appealed from is

*Affirmed.*