# Staunton

## Lib Mullins v. Jerrell Clifton, An Infant, Etc.

September 11, 1963.

Record No. 5612.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, l'Anson and Carrico, JJ

The opinion states the case.

*Carl C. Gillespie* and *Carl C. Gillespie, Jr.* (*Gillespie & Gillespie*, on brief), for the plaintiff in error.

*N. D. Street* and *John W. Gillespie*, for the defendant in error.

SNEAD, J., delivered the opinion of the court.

Jerrell Clifton, an infant, instituted this action at law by his father and next friend, John Clifton, against Lib Mullins claiming $50,000 damages for injuries received as the result of an automobile accident when vehicles operated by Jerrell Clifton and Mullins collided while the Clifton car was overtaking and passing the Mullins automobile as they proceeded westerly on U. S. Highway No. 460 in Buchanan County, Virginia.

Mullins filed his grounds of defense denying negligence and alleging that Jerrell Clifton was guilty of contributory negligence. The jury was unable to reach a verdict and a mistrial was declared. Counsel for Mullins then moved for summary judgment on the ground that Jerrell Clifton was guilty of contributory negligence as a matter of law, which motion was overruled and a new trial was later had. A jury verdict for $15,000 was rendered in favor of Jerrell Clifton at the second trial. A motion to set aside the verdict was overruled and judgment was entered thereon. Mullins here seeks a reversal of this judgment on two grounds; (1) Jerrell Clifton was guilty of contributory negligence as a matter of law, and (2) the trial court erred in its oral instruction to the jury given in response to a question asked by a juror concerning tire marks on the highway shown on Exhibit No. 5.

The evidence adduced at both trials is contained in the record before us and it is substantially the same even though there are some variances in the testimony. As is usually the case in actions resulting from automobile accidents, the evidence was somewhat conflicting. Since the jury has rendered a verdict in favor of Clifton, which was sustained by the trial court, all conflicts in the testimony and all

reasonable inferences deducible therefrom have been resolved in his favor and the judgment will not be reversed unless it is plainly wrong or without credible evidence to support it. In order for us to hold that Clifton was guilty of contributory negligence as a matter of law, we must find that reasonable men could only infer from the evidence that he was contributorily negligent. *Washburn* v. *Dana*, 199 Va. 579, 584, 100 S. E. 2d 708.

The evidence must be viewed in the light most favorable to Clifton as he was the prevailing party in the court below. It may be summarized as follows: On November 6, 1960, at about 9:30 a.m., Jerrell Clifton and Jimmy Davis left Clifton's home in Buchanan county in his father's 1958 Pontiac sedan, driven by Clifton, to attend a funeral. They proceeded easterly on U. S. Highway No. 460 to a dirt road which led to the funeral site but since the dirt road was muddy they decided to return home. They traveled about two miles westerly on U. S. Highway No. 460 when they came upon the Mullins vehicle proceeding in the same direction. Clifton followed the Mullins car for approximately one mile at a speed of about thirty-five miles per hour until they reached a straight stretch in the road where Clifton blew his horn and drove into the eastbound lane to pass Mullins' automobile.

At this point the hard-surfaced portion of U. S. Highway No. 460 was 18 feet 3 inches wide and in the center was a broken white line which separated eastbound and westbound traffic. On the south side of the highway there was a shoulder about 16 feet wide which ended at a steep slope. On the right side there was also a shoulder which led to a high bank.

Three teen-age boys, Jerry Davis, Perry Davis and Kenneth Wade, were standing nearby on the south side of the highway. Neither Clifton nor Jimmy Davis, his passenger, remembered anything after Clifton sounded his horn and started to pass Mullins. They were rendered unconscious as a result of the accident. The three boys testified substantially to the same facts concerning the accident. They stated that the Mullins car came around the curve into the straight stretch of the highway with Clifton's vehicle about thirty feet behind; that both cars were traveling about 35 miles per hour; that Clifton started to pass Mullins at approximately the point where they were standing, and that Jerry Davis waved his hand at Clifton at which time Mullins looked around over his left shoulder at Jerry Davis. Jerry and Perry Davis testified that when Mullins looked back he cut his vehicle to the left two feet over the center

line into the eastbound lane and "crowded" Clifton off the road. At this time the right front fender of the Clifton car collided with the left door of the Mullins vehicle.

After the collision the two cars proceeded down the highway "side by side" for approximately 300 feet where the Clifton car went off the shoulder on the south side of the highway, down a steep bank and crashed into a tree. The Mullins automobile continued down the highway for about another 300 feet before coming to a standstill. It was not badly damaged and could move under its own power. Clifton's car was demolished and the two occupants were taken to a hospital for treatment of their injuries.

Here, Mullins concedes that the jury verdict established his negligence. He contends, however, that under the evidence Clifton was guilty of contributory negligence as a matter of law in that he (1) failed to keep a proper lookout; (2) operated his vehicle at an excessive speed, and (3) failed to have his car under proper and reasonable control.

Mullins argues that Clifton failed to keep a proper lookout because, he says, the evidence shows Clifton was 30 feet behind him when he (Mullins) drove two feet across the center line, which movement Clifton should have seen and if he did see such movement, he utterly disregarded the fact and attempted to pass when it was dangerous to do so. We do not agree that this is a correct appraisal of plaintiff's evidence.

Perry Davis testified that Mullins came around the curve and Clifton "was right behind him"; that when Clifton "got close to Lib [Mullins] he started to go around him" and "When he got up to him Jerry threw up his hands at Jerrell [Clifton] and Lib looked back" and "Lib cut over two feet on Jerrell's side and crowded Jerrell off the road."

Jerry Davis stated that Clifton "started to pass Mullins about the time I threw up my hand at Jerrell and Mullins looked back" over his left shoulder and crossed the white line two feet at which time the cars collided.

Thus plaintiff's evidence shows that Clifton was in the act of passing when Mullins steered his vehicle two feet across the white line into the eastbound lane. The facts do not justify the conclusion that Clifton failed to keep a proper lookout as a matter of law.

Mullins contends next that Clifton was guilty of negligence as a matter of law for the reason that he operated his vehicle at an excessive rate of speed under the circumstances then existing. He

relies on the testimony of plaintiff's witness, Jerry Davis. He testified at the first trial as follows:

"Q. * * * [Y]ou say he was going about how fast?

"A. I don't know; I could not say.

"Q. Can you give us an estimate of the speed?

"A. About seventy-five or eighty.

"Q. About seventy-five or eighty miles an hour. He was going that fast before he left the road?

"A. I would not say how fast he was going before he left the road.

"Q. That is the car Jerrell Clifton was driving?

"A. Yes.

"Q. He was going about seventy-five or eighty miles an hour?

"A. Yes.

"Q. Now, it was not going seventy-five or eighty when he started around, was he?

"A. I would not know how fast he was going when he started around.

"Q. When he came in sight was he going that fast?

"A. No, he was not going that fast when he came in sight.

"Q. It had picked up that much speed from the time it left the highway and hit the tree?

"A. From the time he started to pull around."

At the second trial Jerry Davis estimated that the Clifton car was traveling about 35 miles per hour when it started to pass the Mullins vehicle and that he was going about 75 or 80 miles per hour when it "Went over the hill" and "hit the tree."

At the first trial, Jimmy Davis, who was a passenger in Clifton's car, fixed the speed of it at 35 miles per hour when it started to pass. Kenneth Wade, who did not actually see the vehicles collide, said Clifton's automobile "gradually gained speed" and estimated that it was traveling about 45 miles per hour when it undertook to pass the Mullins car. In the second trial, Jimmy Davis and Wade gave no estimate of the speed of Clifton's car when it started to pass the Mullins vehicle.

There was no evidence in either trial that Clifton was operating his vehicle at an excessive rate of speed from the time he started to pass until the cars collided. The record does not show that there was any other vehicular traffic on the highway at the time in the vicinity of the accident. If his speed after the collision became excessive we do not know from the record what caused such speed.

Clifton and Jimmy Davis did not remember what happened after their vehicle started to pass the Mullins car. In any event Clifton's speed after the collision could not be a proximate cause of the collision of the two cars. Thus, we cannot say that Clifton was guilty of contributory negligence as a matter of law on account of excessive speed.

Mullins' contention that Clifton was contributorily negligent as a matter of law because he failed to keep his vehicle under proper and reasonable control is untenable. He points out that after the impact the Clifton vehicle traveled a distance of 219 feet on the hard surface, 81 feet on or partially on the 16-foot shoulder before it left the south edge of the highway and went down the bank about 74 feet and hit a tree. This, he claims, shows that "* * * the plaintiff was never able or never tried to bring his car under sufficient control to prevent it from catapulting from the south edge of the highway into the tree * * *", while he (Mullins) never lost control of his car after the impact.

The record is devoid of any evidence tending to show that Clifton did not have his vehicle under proper and reasonable control prior to the collision of the two cars. He did not have time to stop his vehicle or avoid striking Mullin's car. It is a matter of common knowledge that when an automobile is involved in a collision and gets out of control it may act in a manner which appears to defy all laws of physics. The jury was instructed as to Clifton's duty to exercise ordinary care to keep his vehicle under proper control. The verdict of the jury resolved this issue in favor of Clifton and the evidence supports their conclusion.

After the case had been submitted to the jury and during their deliberation a juror approached the court and the following colloquy ensued:

"By the Court: I understand, from the Sheriff, that you desire to ask the Court some questions.

"By Earl S. Wallace, Esq., A Juror: Our question is this, Your Honor: We have here a picture which was admitted as Exhibit No. 5, and we understood that we were to consider these pictures as evidence in the case. There are certain tire marks on one of these pictures shown on the highway. They were not mentioned in the evidence presented. Our question is: May we, or may we not consider those tracks?

"By the Court: The purpose of that Exhibit was to show the general location of the area over there. As I understand there is

no evidence of any tire marks, except perhaps some tire marks of the plaintiff's car as it went down the road and over the bank. Any other tire marks there is no evidence.

"By Mr. Wallace: These are the marks we are considering.

"By the Court: That is up to you Jurors to determine. Whether or not those tire marks may have been the car that went over the bank there is no evidence. That is for you gentlemen to determine. There is no evidence of anything in that picture except the tree and the automobile that was there. I don't know that any other questions were asked. Whether or not those tire marks have anything to do with the accident there is no evidence to that effect. You gentlemen are the triers of the facts."

Mullins contends that it was error for the court to instruct the jury that they had the right to determine whether the tire marks shown on Exhibit No. 5 had been made by the Clifton automobile.

Exhibit No. 5 is a photograph taken by one of the State troopers who investigated the accident. It shows, among other things, the highway at the scene, the Mullins vehicle, the tree over the bank which the Clifton car struck and tire marks. The tire marks are obvious. They lead from the left of the center line on the hard surface (eastbound lane) on an angle to the south shoulder and across the shoulder toward the tree.

Mullins, the defendant, did not object or except to the oral instruction in question until after the jury had returned their verdict. He contends, however, that since he made objection and exceptions before judgment was rendered the court had an opportunity to correct the error, and thus his exception was timely. In support thereof, he cites Burks Pleading Practice, 4th Ed., § 306, p. 550.

But assuming that principle of law applies here, the record shows that the exhibit was introduced in evidence by Mullins without any limitation of its purpose. He thereby vouched for what it showed and invited the alleged error. Moreover, the tire marks shown on the exhibit were not in conflict with the testimony. No one denied that the Clifton vehicle went off the highway on the south side in that area. Trooper B. V. Anderson testified: "I found tire marks coming off the hard surface on to the south shoulder and going to the edge of the bank; going to the edge of the shoulder." He said that they "were on an angle." We cannot say that the court's comment was calculated to mislead the jury. Thus it did not constitute reversible error.

For the reasons stated, the judgment appealed from is

*Affirmed.*